IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-173-D

| | |
|---|---|
| SONYA WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CITY OF RALEIGH et al., ) | |
| ) | |
| Defendants. ) | |

On March 18, 2024, Sonya Williams ("plaintiff"), acting individually and on behalf of the Darryl Tyree Williams ("Williams") estate, filed a complaint under 42 U.S.C. § 1983 and North Carolina state law against the City of Raleigh ("Raleigh"), Raleigh City Manager Marchell Adams-David ("Adams-David"), Raleigh Police Chief Estella Patterson ("Patterson"), Officer Christopher Robinson ("Robinson"), Officer Jeremiah Thomas ("Thomas"), Officer Daniel Aquino ("Aquino"), Officer James Scott ("Scott"), and Officer Bryan Ramge ("Ramge") (collectively "defendants") [D.E. 1]. On May 31, 2024, Raleigh moved to dismiss the complaint for failure to state a claim [D.E. 32]. See Fed. R. Civ. P. 12(b)(6). The same day, Patterson, Robinson, Thomas, Aquino, Scott, and Ramge also moved to dismiss the complaint for failure to state a claim [D.E. 34]. See Fed. R. Civ. P. 12(b)(6).

On June 20, 2024, plaintiff filed an amended complaint alleging, inter alia, supervisory liability claims against Patterson and Adams-David in their individual capacities ("count three") and a municipal liability claim against Raleigh ("count four") [D.E. 37]. On August 5, 2024, Raleigh and Patterson moved to dismiss the amended complaint for failure to state a claim [D.E. 62] and filed a memorandum in support [D.E. 63]. See Fed. R. Civ. P. 12(b)(6). On September 3,

2024, Adams-David moved to dismiss the amended complaint for failure to state a claim [D.E. 65] and filed a memorandum in support [D.E. 66]. See Fed. R. Civ. P. 12(b)(6). On September 9, 2024, plaintiff responded in opposition to Raleigh's motion to dismiss [D.E. 68]. On September 23, 2024, Raleigh and Patterson replied [D.E. 69]. On September 24, 2024, plaintiff responded in opposition to Adams-David's motion to dismiss [D.E. 70]. On October 8, 2024, Adams-David replied [D.E. 71]. As explained below, the court denies as moot the defendants' motion to dismiss the complaint, grants in part Raleigh and Patterson's motion to dismiss the amended complaint, grants Adams-David's motion to dismiss the amended complaint, and permits plaintiff's municipal liability failure-to-train claim against Raleigh to proceed.

I.

In the early morning hours of January 17, 2023, Williams, along with a passenger, were sitting in Williams's parked car nearby several storefronts in Raleigh, North Carolina. See Am. Compl. [D.E. 37] ¶ 26. While on patrol, Robinson and Thomas approached Williams's car. See id. at ¶ 28. Upon looking into the vehicle, Robinson "observed a bottle in the passenger's hand and a small amount of what he believed to be marijuana on the passenger's lap." Id. at ¶ 32. Robinson told Williams and the passenger to exit the car. See id. Once Williams exited the car, Robinson frisked and searched Williams. See id. at ¶¶ 36–38. During the search, Robinson recovered a folded dollar bill from Williams's pocket containing a white powdery residue. See id. at ¶¶ 39, 47. At some point, Aquino, Scott, and Ramge joined Robinson and Thomas. See id. at ¶ 41.

Robinson attempted to arrest Williams, but Williams fled. See id. at ¶¶ 40–41. "Robinson quickly deployed his Taser in drive stun mode and then a second time in probe mode." Id. at ¶ 43. When tased, Williams fell down. See id. at ¶ 44. Aquino and Scott again attempted to arrest

2

Williams, but Williams recovered and fled. See id. at ¶ 45. An unspecified officer "deployed another Taser in probe mode." See id. When tased, Williams fell down. See id.

Robinson, Thomas, Aquino, Scott, and Ramge (collectively "the officer defendants"), "subdued and surrounded [Williams], forcefully pinning him to the pavement." Id. at ¶ 46. At that point, the officer defendants knew Williams was unarmed and "posed no threat to the safety of the officers or to the safety of anyone in the surrounding community." Id. at ¶ 51; see id. at ¶ 55. The officer defendants pinned Williams's torso and legs in a prone position and "began shouting multiple commands, ordering him to put his hands behind his back." Id. at ¶ 57. The officer defendants observed Williams was empty-handed. See id. at ¶ 58. "Thomas then tased [Williams] against his bare skin in drive stun mode." Id. at ¶ 59. At this point, Williams had been tased four times. See id. at ¶ 65. None of the officer defendants intervened despite Williams's distress. See id. at ¶¶ 63–64.

Williams pleaded with the officer defendants not to tase him a fifth time, stating "I have heart problems. . . . Please . . . please." Id. at ¶ 66. "Robinson responded by verbally counting down from three in quick succession before tasing [Williams] a fifth time, in drive stun mode." Id. at ¶ 68. "After the fifth Taser application, Mr. Williams screamed in pain and then fell silent, losing consciousness." Id. at ¶ 70. While Williams was unresponsive, the officer defendants handcuffed Williams's hands behind his back. See id. at ¶ 71. During or soon after the officer defendants handcuffed Williams, Thomas tased Williams for a sixth time. See id. at ¶ 72.

At approximately 2:06 AM, the officer defendants requested an expedited EMS response and began CPR on Williams. See id. at ¶ 76. At 2:59 AM, Williams arrived at the hospital. See id. at ¶ 78. At 3:01 AM, hospital staff pronounced Williams dead. See id. at ¶ 80. An autopsy ruled Williams's death "a homicide and listed the cause of death as cardiac arrest in the setting of

3

cocaine intoxication, physical exertion, conducted energy weapon use, and physical restraint." Id. at ¶ 81. At all relevant times, Adams-David had supervisory authority over the Raleigh Police Department, and Patterson had supervisory authority over the officer defendants. See id. ¶¶ 19–20.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554– 63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense."

4

Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

In count three, plaintiff alleges section 1983 supervisory liability against Patterson and Adams-David. See Am. Compl. ¶¶ 114–25. To establish supervisory liability under section 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted). Under Shaw, the subordinate's conduct must be "pervasive," meaning that the "conduct is widespread, or at least has been used on several different occasions." Id. To show deliberate indifference, a plaintiff

5

must demonstrate a supervisor's "continued inaction in the face of documented widespread abuses." Id. (quotation omitted). Furthermore, a supervisor cannot guard against employee misconduct "when [she] has no basis upon which to anticipate the misconduct." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984); see Randall v. Prince George's County, 302 F.3d 188, 206 (4th Cir. 2002).

Plaintiff fails to plausibly allege that Patterson and Adams-David had actual knowledge that the officer defendants were "engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like [Williams]." Shaw, 13 F.3d at 799. Plaintiff alleges that Patterson and Adams-David "knew or reasonably should have known, participated in, condoned, and/or ratified" the officer defendants' alleged unlawful taser deployments and failures to intervene. See Am. Compl. ¶ 118. Plaintiff, however, fails to plausibly allege how Patterson or Adams-David had actual knowledge that the officer defendants were "engaged" or would engage in the alleged misconduct. Shaw, 13 F.3d at 799.

Plaintiff also fails to plausibly allege that Patterson or Adams-David had constructive knowledge because plaintiff cites no prior instance of taser misuse or failure to intervene by the officer defendants. Instead, plaintiff cites several unrelated reports concerning other alleged instances of other misconduct by other Raleigh police officers. See Am. Compl. ¶¶ 163, 172–73. General allegations of misconduct, however, cannot support a supervisory liability theory under section 1983. See Randall, 302 F.3d at 207; Hill v. Robeson Cnty., N.C., 733 F. Supp. 2d 676, 689 (E.D.N.C. 2010). Plaintiffs must plausibly allege "that the failure to supervise contributed to the constitutional deprivation in question." Hill, 733 F. Supp. 2d at 689. Plaintiff's amended complaint, however, provides no basis on which Patterson or Adams-David could have anticipated the officer defendants' alleged misconduct. See Slakan, 737 F.2d at 373; Randall, 302 F.3d at

6

206–07. Thus, plaintiff has failed to plausibly allege that Patterson or Adams-David had sufficient knowledge. See Randall, 302 F.3d at 206–07; Armstrong v. City of Greensboro, 190 F. Supp. 3d 450, 468 (M.D.N.C. 2016); Moody v. City of Newport News, 93 F. Supp. 3d 516, 540–42 (E.D. Va. 2015); Hill, 733 F. Supp. 2d at 689; cf. Dorsey v. Sokoloff, 381 F. Supp. 3d 521, 529 (D. Md. 2019), aff'd, No. 19-1671, 2021 WL 5275535 (4th Cir. Nov. 12, 2021) (per curiam) (unpublished).

Plaintiff cites Pryor v. Debnam, No. 5:98-CV-613, 1999 WL 1939989 (E.D.N.C. Mar. 22, 1999) (unpublished), and argues that such specificity is not required to pursue a supervisory liability claim. See [D.E. 68] 25–26; [D.E. 70] 12–13. Pryor, however, relies on the pleading standard from Conley v. Gibson, 355 U.S. 41, 45–46 (1957). See Pryor 1999 WL 1939989, at *2. Twombly vitiated Conley's more permissive pleading standard and replaced it with the familiar pleading standard employed today. See Twombly, 550 U.S. at 560–61; Iqbal, 556 U.S. at 678; Cook v. Howard, 484 F. App'x 805, 809–11, 826 n.19 (4th Cir. 2012) (per curiam) (unpublished). Thus, even if Patterson and Adams-David had knowledge of "Raleigh PD officers using excessive force against [other] citizens," plaintiff merely speculates as to how that knowledge made Patterson and Adams-David aware that the officer defendants engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Williams. [D.E. 68] 19. Accordingly, plaintiff fails to plausibly allege that Patterson and Adams-David had the requisite actual or constructive notice. See Twombly, 550 U.S. at 560–61; Iqbal, 556 U.S. at 678; Cook, 484 F. App'x at 809–11, 826 n.19.

Plaintiff also fails to plausibly allege deliberate indifference. Plaintiff alleges that Patterson and Adams-David trained, endorsed, or condoned the officer defendants alleged misconduct. See Am. Compl. ¶¶ 123, 118. Plaintiff, however, fails to plausibly allege that Patterson and Adams-David failed to act "in the face of documented widespread abuses." Shaw, 13 F.3d at 799. "While

7

Plaintiff alleges that indifference or encouragement led to [Williams's] specific constitutional injuries, there is no indication of a broader pattern of constitutional injuries occurring." Armstrong, 190 F. Supp. 3d at 468–69. Thus, plaintiff fails to plausibly allege deliberate indifference. See Shaw, 13 F.3d at 799; Smith v. Town of S. Hill, 611 F. Supp. 3d 148, 184 & n.32 (E.D. Va. 2020); Armstrong, 190 F. Supp. 3d at 468–69.

Because plaintiff has failed to plausibly allege knowledge or deliberate indifference, plaintiff's supervisory liability theories against Patterson and Adams-David fail. See Shaw, 13 F.3d at 799. Accordingly, the court dismisses count three.

B.

In count four, plaintiff seeks to hold Raleigh liable under Monell v. Department of Social Services, 436 U.S. 658 (1978). See Am. Compl. ¶¶ 126–88. Municipal entities cannot be held liable under section 1983 solely because they employed a tortfeasor. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–405 (1997). Rather, when a municipality is sued—directly or in an official-capacity suit—the plaintiff must plausibly allege that a policy or custom attributable to the municipality caused the violation of the plaintiff's federally protected rights. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690–94; King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014); Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999). There are four ways in which liability for a policy or custom may arise:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate

8

indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle, 326 F.3d at 471 (cleaned up).

A violation results from a municipal entity's policy or custom if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121–23 (1988). Even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, a municipality is not liable simply because a section 1983 plaintiff "is able to identify conduct attributable to the municipality." Riddick v. Sch. Bd., 238 F.3d 518, 524 (4th Cir. 2000). Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Brown, 520 U.S. at 404 (cleaned up); see City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Riddick, 238 F.3d at 524. Thus, to avoid imposing respondeat superior liability on municipalities, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19.

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) abrogated on other grounds Short v. Hartman, 87 F.4th 593 (4th Cir. 2023), cert. denied, 144 S. Ct. 2631 (2024). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404.

9

Plaintiff advances two Monell theories. First, Raleigh's use of force policy is textually unconstitutional. See Am. Compl. at ¶¶ 122–59. Second, Raleigh failed to adequately train the officer defendants. See id. at ¶¶ 160–88.

Plaintiff argues that Raleigh's use of force policy authorizes officers to use tasers "simply to control" suspects and thereby violates the Fourth Amendment. [D.E. 68] 16 (quotation omitted). Specifically, plaintiff alleges that Raleigh's use of force policy "expressly authorizes Raleigh PD officers to use a [t]aser as a method of control against a suspect . . . that is only passively resisting and poses no threat of harm to anyone." Id. Plaintiff cites Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892 (4th Cir. 2016), and argues that "it is clearly established that the use of a [t]aser [to control a passively resisting suspect] violates the Fourth Amendment." [D.E. 68] 16. In Armstrong, the Fourth Circuit held that the use of a taser "in response to resistance that does not raise a risk of immediate danger" violates the Fourth Amendment. Armstrong, 810 F.3d at 905. The Fourth Circuit also held that even physical resistance may not justify deploying a taser if the resistance "pose[s] no threat to the officer or anyone else." Id. (quotation omitted).

Raleigh's use of force policy authorizes an officer to use a taser to "gain physical control or positional advantage" over a resisting suspect. [D.E. 37-1] 9. Raleigh's use of force policy also explicitly forbids using a taser in response to a suspect's "passive resistance, which is defined as simple non-compliance to a lawful command." Id. Moreover, Raleigh's use of force policy states that passive resistance includes "physical resistance which does not pose an imminent threat of assault or indicate escalating aggression." Id. Raleigh's use of force policy regarding tasers comports with Armstrong and the Fourth Amendment. Compare [D.E. 37-1] 8–11 with Armstrong, 810 F.3d at 902–06; see Graham v. Connor, 490 U.S. 386, 395–97 (1989); Meyers v. Baltimore Cnty., 713 F.3d 723, 732–33 (4th Cir. 2013). Thus, plaintiff fails to plausibly allege her

10

express policy theory. See Woody v. City of Isle of Palms, No. 2:21-CV-3303, 2023 WL 6228560, at *10–11 (D.S.C. Sept. 26, 2023) (unpublished), clarified sub nom. Woody v. Phillips, No. 2:21-CV-3303, 2023 WL 6925968 (D.S.C. Oct. 19, 2023) (unpublished); Fogg v. U.S.A. Transp. Sec. Admin., No. 5:22-CV-124, 2023 WL 3635622, at *3 (E.D.N.C. May 24, 2023) (unpublished); Freeman v. Turner, No. 4:13-CV-129, 2015 WL 5571905, at *9 (E.D.N.C. Apr. 27, 2015) (unpublished).

As for plaintiff's failure to train theory, plaintiff alleges: (1) that latent deficiencies in Raleigh's use of force policy were passed on to officers trained under those policies, (2) that Raleigh knew of past accusations of excessive force against Robinson and still allowed him to train other officers, including Thomas, (3) that Thomas and Robinson lacked sufficient training hours regarding tasers, and (4) that Raleigh knew of training deficiencies but failed to remediate them. See Am. Compl. ¶¶ 136–49, 160–67, 181–88. Plaintiff plausibly alleges facts that, if true, state a claim for relief. See Owens, 767 F.3d at 403; Moody, 93 F. Supp. 3d at 537–40; Daniels v. City of S. Charleston, No. 2:20-CV-779, 2021 WL 3624696, at *5 (S.D. W. Va. Aug. 16, 2021) (unpublished); Booker v. City of Lynchburg, No. 6:20-CV-11, 2021 WL 519905, at *4–7 (W.D. Va. Feb. 11, 2021) (unpublished). Whether plaintiff's claim will survive a motion for summary judgment is an issue for another day. Cf. Smith v. Atkins, 777 F. Supp. 2d 955, 966–68 (E.D.N.C. 2011). Accordingly, the court denies Raleigh's motion to dismiss plaintiff's failure-to-train claim against Raleigh in count four.

III.

In sum, the court DENIES AS MOOT the moving defendants' motions to dismiss the complaint [D.E. 32, 34], GRANTS IN PART Raleigh and Patterson's motion to dismiss the amended complaint [D.E. 62], GRANTS Adams-David's motion to dismiss the amended

11

complaint [D.E. 65], DISMISSES Adams-David and Patterson from the action, and DISMISSES count three of the amended complaint. The court also DISMISSES plaintiff's claim in count four that Raleigh's use of force policy is textually unconstitutional but permits the failure to train claim against Raleigh to proceed. The parties SHALL engage in a court-hosted mediation with United States Magistrate Judge Numbers.

SO ORDERED. This 28 day of February, 2025.

JAMES C. DEVER III
United States District Judge